1  DURIE TANGRI LLP
   JOSHUA H. LERNER (SBN 220755)
2  jlerner@durietangri.com
   MICHAEL A. FELDMAN (SBN 295780)
3  mfeldman@durietangri.com
   217 Leidesdorff Street
4  San Francisco, CA 94111
   Telephone:    415-362-6666
5  Facsimile:    415-236-6300

6  Attorneys for Plaintiffs
   JMA VENTURES, LLC and
7  THE ROXBOROUGH GROUP, LLC

8  BRYAN CAVE LLP
   MERYL MACKLIN (SBN 115053)
9  meryl. macklin@bryancave.com
   560 Mission Street, 25th Floor
10 San Francisco, CA 94105-2994
   Telephone: (415) 675-3400
11 Facsimile: (415) 675-3434

12 BRYAN CAVE LLP
   NOAH M. WEISSMAN (Admitted *Pro Hac Vice*)
13 nmweissman@bryancave.com
   JACQUELYN N. SCHELL (Admitted *Pro Hac Vice*)
14 jacquelyn.schell@bryancave.com
   1290 Avenue of the Americas. 35th Floor
15 New York, NY 10104
   Telephone: (212) 541-2000
16 Facsimile: (212) 541-4630

17 Attorneys for Defendant
   STARWOOD HOTELS & RESORTS WORLDWIDE, INC.
18

19              IN THE UNITED STATES DISTRICT COURT
20             FOR THE NORTHERN DISTRICT OF CALIFORNIA
21                    SAN FRANCISCO DIVISION

| | |
|---|---|
| 22 JMA VENTURES, LLC and THE ROXBOROUGH GROUP, LLC, | Case No. 16-cv-01941-JD |
| 23 | **JOINT CASE MANAGEMENT STATEMENT** |
| 24                    Plaintiffs, | Date:    August 3, 2016 |
| 25          v. | Time:    1:30 p.m. |
| | Ctrm:    11, 19th Floor |
| 26 STARWOOD HOTELS AND RESORTS WORLDWIDE INC., | Judge:   Honorable James Donato |
| 27                    Defendant. | |

28

Pursuant to Civil L.R. 16-9 and Rule 26(f) of the Federal Rules of Civil Procedure, Plaintiffs JMA Ventures, LLC and The Roxborough Group, LLC ("Plaintiffs") and Defendant Starwood Hotels & Resorts Worldwide, Inc. ("Starwood") respectfully submit this Joint Case Management Statement and [Proposed] Case Management Order.

## JURISDICTION AND SERVICE

There are no disputes as to service, and no additional parties need to be served.

Plaintiffs contend that this Court has personal jurisdiction over Defendant because Starwood has availed itself of the benefits and protections afforded by California law by owning property in San Francisco, California and by negotiating with San Francisco-based companies to sell property located in San Francisco, actions taking place and causing harm in this District and regarding property located in this District. In addition, this case arises out of Starwood's contacts with this District.

Plaintiffs contend that this Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1332(a) because there is complete diversity among the parties. Plaintiffs are Delaware companies with their principal places of business in San Francisco, California. Starwood is a Maryland Corporation with its principal place of business in Stamford, Connecticut.

Starwood contends that this Court should not exercise jurisdiction, because the parties agreed in the Confidentiality and Access Agreement, paragraph 13, that, "Any litigation or other court proceedings with respect to any matter arising from or in connection with this Agreement shall be conducted in the federal or state courts in New York County in the State of New York. The parties hereby submit to personal jurisdiction and consent to venue in such courts and waive any defense based on forum non conveniens." Plaintiffs contend that the Confidentiality and Access Agreement does not apply to the claims in this case.

## FACTS

The following sets out a brief chronology of the facts at issue in this case:

### Plaintiffs' Statement:

In early 2014, JMA Ventures, Roxborough, and Starwood outlined the key terms of a deal for Plaintiffs to purchase the St. Regis Hotel in San Francisco, which Starwood owned. The parties agreed on and signed a Letter of Intent and attached Term Sheet for the purchase of the St. Regis Hotel that

included a specific purchase price.  The parties agreed to negotiate in good faith "to attempt to agree on the definitive form of agreements . . . for Starwood to sell the St. Regis San Francisco . . . ."  The parties also agreed in the Letter of Intent that the Definitive Agreements "shall include the terms set forth in the Term Sheet and such other terms as agreed to by the parties that are consistent with this Letter of Intent."

The Letter of Intent set a 30-day Negotiation Period. The parties extended the Negotiation Period nearly 20 times. In each of the Negotiation Period extensions, Starwood represented and agreed that it would negotiate in good faith.  Thus, each time the parties extended the Negotiation Period, Plaintiffs signed a statement that it believed Starwood was negotiating in good faith.

The parties ended up negotiating for more than a year.  During much of that time, the purchase price remained constant.  In late 2014, the parties exchanged near-final drafts, going so far as to circulate signature pages and discuss holding them in escrow. But then in 2015, negotiations broke down, and it became apparent that good faith negotiations were at an end. Starwood insisted on three separate price increases. In fact, each time Plaintiffs agreed to Starwood's increasing price demands, Starwood raised the price further.

In February 2015, Cindy Potter, a Starwood employee, had a phone call with Marc Perrin of Roxborough and Simon Turner of Starwood.  Potter demanded that Plaintiffs pay more than the parties had initially agreed in the Letter of Intent and Term Sheet.  Plaintiffs agreed in an effort to close the deal. But after Plaintiffs agreed, Starwood demanded another price increase. When Plaintiffs agreed to the second increase, Starwood again raised the price again, this time demanding to share in Plaintiffs' profits after selling the St. Regis Hotel.  The parties continued to negotiate but could not agree on an additional extension to the Negotiation Period.  Plaintiffs agreed to the additional price increase and profit sharing. However, Starwood's Simon Turner then informed Plaintiffs that Starwood's new CEO had decided he did not want to sell the St. Regis Hotel at all.

The Letter of Intent has a "Governing Law" clause, but not a "Jurisdiction and Venue" clause.  The parties also signed a Confidentiality and Access Agreement, ("CAA") which, as its name indicates, sets forth the terms on which Starwood would be willing to provide Confidential Information to Plaintiffs.  The CAA contains not only a Jurisdiction and Venue clause but also a Governing Law clause that is identical to Governing Law clause in the Letter of Intent.  The Jurisdiction and Venue clause in the

CAA makes no reference to the other agreements that the parties were signing.  Plaintiffs are not suing for any breach of the CAA.

### Starwood's Statement

Plaintiffs, "sophisticated commercial real estate entities who regularly engage in hundreds of millions of dollars in real estate transactions," sought to purchase the St. Regis San Francisco Hotel ("Hotel") from Starwood.  Plaintiffs and Starwood, as "a common first step in complex commercial transactions such as this one" entered into a Confidentiality and Access Agreement ("Access Agreement"), to govern the exchange of information during due diligence and negotiations, and a Letter of Intent ("LOI"), "to set forth the basis on which [they were] willing to enter into negotiations to attempt to agree on the definitive form of agreements ("Definitive Agreements")."  In the LOI, the parties agreed that it "does not constitute a contract for the transaction described in the term sheet, but only expresses the interest and desire of the parties to negotiate and attempt to agree on and enter into the definitive agreements for such transaction, subject to the terms set forth herein."  The LOI also provides that "neither party shall rely on this letter of intent or any further discussions or negotiations regarding the transaction described in the term sheet, as a commitment, offer or agreement by the other party to enter into such transaction."

In the LOI, the parties expressly incorporated the terms of the Access Agreement:

> The confidentiality and access agreement, dated May 22, 2014, between the parties shall apply to the existence and the terms of this Letter of Intent, and all discussions and negotiations between the parties pursuant to this Letter of Intent.  This paragraph shall survive the termination of this Letter of Intent.

(LOI ¶ 3.)   The Access Agreement stressed that "the execution and delivery of any definitive agreements by Starwood or any of its affiliates shall be subject to the prior written approval of the Board of Directors or duly authorized executive committee of Starwood, which may be withheld in its sole and absolute discretion, notwithstanding the completion of all necessary definitive agreements."  Plaintiffs also knew from the draft term sheet attached to the LOI ("Term Sheet") that Starwood would want the Definitive Agreements to include a provision stating that Definitive Agreements "are subject to the approval of Starwood's Board of Directors in its sole and absolute discretion …"

With regard to due diligence, in the Access Agreement,"[Plaintiffs] acknowledge[d] that

Starwood makes no representation, warranty or guaranty whatsoever with respect to any of the Confidential [due diligence] Information, including, without limitation, the accuracy or completeness of any such Confidential Information, and Starwood shall have no liability for the Receiving Party's use of or reliance on any such Confidential Information except as expressly set forth in any definitive transaction documents entered into between the parties." (Access Agreement ¶ 6.) Rather than placing any burden on Starwood, the Access Agreement gave Plaintiffs the right "to perform such examinations, tests, investigations and studies at the Hotel (the "Inspections") as the [Plaintiffs] reasonably deem[] advisable …" while providing that Plaintiffs "hereby release[] Starwood … for any liability, damages, loss, cost or expense incurred by any of Receiving Party arising from or in connection with the Inspection, except to the extent resulting from or caused by Starwood's or any Starwood Party's gross negligence or willful misconduct." (*Id.* at ¶ 7.)

The parties agreed in the LOI and Access Agreement that New York law governs any disputes. (Access Agreement ¶ 12; LOI ¶ 6.) The parties also agreed, in the Access Agreement:

> Any litigation or other court proceedings with respect to any matter arising from or in connection with this Agreement shall be conducted in the federal or state courts in New York County in the State of New York. The parties hereby submit to personal jurisdiction and consent to venue in such courts, and waive any defense based on forum non conveniens."

(Access Agreement ¶ 13.)

After executing the LOI, Starwood and Plaintiffs began negotiating the terms and form of Definitive Agreements. Plaintiffs also began due diligence to determine whether they wanted to proceed with a purchase of the Hotel. These negotiations and Plaintiffs' due diligence stretched from May 22, 2014 through February 27, 2015, with both sides and their counsel negotiating strenuously. During that time, the parties agreed to extend their exclusive Negotiation Period 18 times, and in each extension agreement, the parties acknowledged and agreed that each of them were "diligently pursuing good faith negotiations…." During the negotiation and due diligence process, Plaintiffs identified several conditions at the Hotel that they claimed justified a change of the proposed purchase price for the Hotel, although the Term Sheet contemplated a sale of the Hotel "as is." The parties also negotiated over property issues at the Hotel and whether Starwood or Plaintiffs would make any applicable repairs.

In early 2015, Starwood learned that hotels of comparable and even lesser quality in the San

Francisco market were selling at a price per room well above the proposed price for the Hotel. Thus, it became apparent that the originally-proposed price for the Hotel had dropped below market during the course of the parties' negotiations and accordingly, Starwood's senior management and Board of Directors would not be able to approve the sale at that price as being in the best interest of Starwood's shareholders. Starwood honestly and expeditiously alerted Plaintiffs that changes in the market would likely impact its ability to obtain final approval for the transaction at the originally proposed price.

Rather than end negotiations, Starwood continued to work with Plaintiffs to try to reach an acceptable sales price and to re-structure the transaction in way that could work for both parties. Unfortunately, those efforts were not successful, and the LOI expired by its terms on February 27, 2015. The parties' last agreement extending the Negotiation Period was executed on February 23, 2015—after Starwood alerted Plaintiffs to the need for a higher sales price in order to obtain Board approval. In that extension agreement, as in all the preceding extension agreements, Plaintiffs confirmed that the parties were diligently pursuing good faith negotiations of the Definitive Agreements.

After the final Negotiation Period expired on February 27, Starwood offered to extend the Negotiation Period further. Starwood sent yet another proposed extension on March 15, offering to continue their good faith negotiations and extend the exclusive Negotiation Period through April 15. Plaintiffs, however, rejected this offer, explaining on March 30, 2015, that they "needed additional time to discuss the situation with [their] capital partner in light of our recent discussions with you about increased pricing and potential structure to fund such price increases." Plaintiffs also provided a new term sheet. Even after expiration of the Negotiation Period and LOI, the parties continued to negotiate possible price and deal structures, but they ultimately could not come to a mutually acceptable price or structure. In April 2015, more than a month after the last LOI extension expired, negotiations ended.

## LEGAL ISSUES[1]

Thus far, the parties have identified the following legal issues in this action. Both parties acknowledge that additional issues may arise during the course of litigation and that the identified legal questions may encompass sub-questions. Nothing in this statement constitutes a waiver or prohibits the

---

[1] Plaintiffs requested that the parties not include parenthetical argument pursuant to the Standing Order. Starwood has insisted on including parentheticals over Plaintiffs' objection

parties from raising additional legal issues or sub-issues at a later point in this litigation.

      1.   <u>Whether the Confidentiality and Access Agreement Requires Dismissal of This Action or, in the Alternative, Transfer to the Southern District of New York.</u>

      Starwood contends that the Confidentiality and Access Agreement is incorporated by reference in the LOI, applies to the claims in this case, and requires either dismissal of the Complaint or, in the alternative, transfer of this action to the Southern District of New York.  Fed. R. Civ. P. 12(b)(3); 28 U.S.C. § 1406; *see Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 325 (9th Cir. 1996) ("[F]orum selection clauses are *prima facie* valid and should not be set aside unless the party challenging enforcement of such a provision can show it is unreasonable under the circumstances."); *S. Cal. Fleet Servs., Inc. v. ADP Dealer Servs., Inc.*, No. EDCV 13-0238 JGB, 2013 WL 1400950, at *2 (C.D. Cal. Apr. 1, 2013) ("Rather than dismiss an action where venue is improper, the Court may exercise its discretionary power to transfer the action pursuant to 28 U.S.C. § 1406.").

      Plaintiffs contend that the Jurisdiction and Venue Clause in the Confidentiality and Access Agreement does not apply to the claims in this case, is not incorporated by reference in the Letter of Intent, and does not require dismissal or transfer to the Southern District of New York.  *See Sempra Energy Trading Corp.* v. *Algoma Steel*, Inc., No. 00-civ-9227, 2001 WL 282684 (S.D.N.Y. March 22, 2001), *aff'd,* 300 F.3d 242 (2d Cir. 2002); *Packer v. TDI Sys., Inc.*, 959 F. Supp. 192, 198 (S.D.N.Y. 1997).

      2.   <u>Whether the Confidentiality and Access Agreement's Jury Trial Waiver Applies To The Claims.</u>

      Starwood contends that the jury trial waiver in the Confidentiality and Access Agreement applies to the claims in this case.  *See Lehman Bros. Holdings Inc. v. Bethany Holdings Grp., LLC*, 801 F. Supp. 2d 224, 233 (S.D.N.Y. 2011).

      Plaintiffs contend that the jury trial waiver in the Confidentiality and Access Agreement does not apply to the claims in this case.  *See Sempra Energy Trading Corp. v. Algoma Steel, Inc.*, No. 00-civ-9227, 2001 WL 282684 (S.D.N.Y. March 22, 2001), *aff'd,* 300 F.3d 242 (2d Cir. 2002); *Packer v. TDI Sys., Inc.*, 959 F. Supp. 192, 198 (S.D.N.Y. 1997).

1    3. <u>Whether the Complaint Adequately Pleads a Claim for Fraud.</u>

2    Starwood contends that the Fraud Claim in the Complaint fails to state a claim upon which relief

3 can be granted and fails to plead fraud with the requisite particularity.  Fed. R. Civ. P. 9(b); Fed. R. Civ.

4 P. 12(b)(6); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662,

5 678 (2009); *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1124 (9th Cir. 2009) ("Averments of fraud must

6 be accompanied by 'the who, what, when, where, and how' of the misconduct charged."); *Harsco Corp.*

7 *v. Segui*, 91 F.3d 337, 345 (2d Cir. 1996) ("Where a party specifically disclaims reliance upon a

8 particular representation in a contract, that party cannot, in a subsequent action for common law fraud,

9 allege it was fraudulently induced to enter into the contract by the very representation it has disclaimed

10 reliance upon."); *HSH Nordbank AG v. UBS AG*, 95 A.D.3d 185, 188, 941 N.Y.S.2d 59 (1st Dep't 2012)

11 (no duty of disclosure exists in arms' length transaction between sophisticated business parties); *Albert*

12 *Apt. Corp v. Corbo Co.*, 582 N.Y.S.2d 409, 410 (1992); *Jana L. v. W. 129th St. Realty Corp.*, 22 A.D.3d

13 274, 278 (1st Dep't 2005) (dismissing fraud claim based on omission that "could have been obtained …

14 through the exercise of ordinary intelligence"); *P.T. Bank Cent. Asia v. ABN AMRO Bank N.V.*, 301

15 A.D.2d 373, 376 (1st Dep't 2003).

16    Plaintiffs contend that the Complaint states a claim for fraud under FRCP 9.  *See Gelles v. TDA*

17 *Indus., Inc.,* No. 90 Civ. 5133(MBM), 1991 WL 39673, at *6 (S.D.N.Y.1991); *Seippel v. Jenkens &*

18 *Gilchrist, P.C.,* 341 F.Supp.2d 363, 378 n. 104 (S.D.N.Y.2004); *Braddock v. Braddock*, 871 N.Y.S.2d

19 68, 72-73 (2009); *Pike v. New York Life Ins. Co.*, 72 A.D.3d 1043, 1050, 901 N.Y.S.2d 76, 83 (2010).

20    4. <u>Whether Starwood Breached a Duty to Negotiate in Good Faith.</u>

21    Starwood contends that it did not breach any duty to negotiate in good faith.  *See L-7 Designs,*

22 *Inc. v. Old Navy, LLC,* 964 F. Supp. 2d 299, 312 (S.D.N.Y. 2013) (quoting *Penguin Grp. (USA) Inc. v.*

23 *Steinbeck*, Civ. Act. No. 06CV2438 (GBD), 2009 WL 857466, at *2 (S.D.N.Y. Mar. 31, 2009)) ("The

24 duty to negotiate in good faith obligates a party only to try to reach an agreement; a party does not act in

25 bad faith merely because, in the end, it refuses to capitulate to the other side's demands."); *Gas Nat., Inc.*

26 *v. Iberdrola, S.A.*, 33 F. Supp. 3d 373, 383 (S.D.N.Y. 2014), *appeal dismissed* (Aug. 29, 2014) ("bad

27 faith requires some 'deliberate misconduct'—arbitrary or capricious action taken out of spite or ill will or

28 to back out of an otherwise binding contractual commitment."); *Zilig v. Prentice-Hall, Inc.*, 717 F.2d

671, 681 (2d Cir. 1983).

Plaintiffs contend that Starwood breached its duty to negotiate in good faith.  *See Teachers Ins. & Annuity Ass'n of Am. v. Tribune Co.*, 670 F. Supp. 491, 498 (S.D.N.Y. 1987); *SIGA Technologies, Inc. v. PharmAthene, Inc.*, 67 A.3d 330 (Del. 2013); *Worldwide Servs., Ltd. v. Bombardier Aerospace Corp.*, No. 14 CIV. 7343 ER, 2015 WL 5671724, at *16 (S.D.N.Y. Sept. 22, 2015); *EQT Infrastructure Ltd. v. Smith*, 861 F. Supp. 2d 220, 231 (S.D.N.Y. 2012); *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 96 F.3d 275, 280 (7th Cir. 1996).

5.   Whether Plaintiffs are Estopped from Alleging that Starwood Acted in Bad Faith.

Starwood contends that Plaintiffs are estopped from alleging that Starwood acted in bad faith or have waived any such argument.  *See Barmash v. Perlman*, 40 Misc. 3d 1231(A), 980 N.Y.S.2d 274 (Sup. Ct. 2013) ("A plaintiff is estopped from maintaining a suit if the plaintiff ratified, approved, confirmed and participated in the matters which are the basis of the present complaint."); *Blake v. Blake*, 225 A.D.2d 337, 337, 638 N.Y.S.2d 632, 633 (1996).

Plaintiffs contend that they are not estopped from alleging that Starwood acted in bad faith.  *See Greene v. Greene*, 80 A.D.2d 55, 59, 437 N.Y.S.2d 339, 342 (1981), aff'd, 56 N.Y.2d 86, 436 N.E.2d 496 (1982); LNC Investments, Inc. v. First Fid. Bank, N.A. New Jersey, 173 F.3d 454, 464 (2d Cir. 1999); In re Vebeliunas, 332 F.3d 85, 94 (2d Cir. 2003).

6.   Whether Plaintiffs Can Assert (or Recover Damages Under) Both a Claim for Fraud and a Claim for Breach of the Covenant to Negotiate in Good Faith.

Starwood contends that Plaintiffs cannot allege (or recover under) both their claim for fraud and their claim for breach of a covenant to negotiate in good faith.  *See Deerfield Commc'ns Corp. v. Chesebrough-Ponds, Inc.*, 68 N.Y.2d 954, 956, 502 N.E.2d 1003, 1004 (1986); *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 19-20 (2d Cir. 1996); *McKernin v. Fanny Farmer Candy Shops, Inc.,* 176 A.D.2d 233, 234, 574 N.Y.S.2d 58, 59 (2d Dep't 1991) (where a fraud claim "is premised upon an alleged breach of contractual duties and the supporting allegations do not concern representations which are collateral or extraneous to the terms of the parties' agreement, a cause of action sounding in fraud does not lie"); *Metropolitan Transp. Auth. v. Triumph Advertising Productions*, 116 A.D.2d 526, 527, 497 N.Y.S.2d 673, 675 (1st Dep't 1986) (dismissing fraud claim that "allege[d] only a

1   breach of the representation of performance implicit in making the bid and a subsequent assurance of

2   performance" by the defendant); *see also Papa's-June Music, Inc. v. McLean*, 921 F.Supp. 1154, 1162

3   (S.D.N.Y.1996) (dismissing fraud claim where "[t]he complaint does not allege a fraud claim that is

4   sufficiently distinct from the breach of contract claim" but "merely appends allegations about

5   [defendant's] state of mind to the claim for breach of contract"); *see also Robinson Helicopter Co. v.*

6   *Dana Corp.,* 34 Cal. 4th 979, 988 (2004).

7        Plaintiffs contend that they can assert both their fraud claim and their claim for breach of the

8   covenant to negotiate in good faith. *See Deerfield Commc'ns Corp. v. Chesebrough-Ponds, Inc.*, 68

9   N.Y.2d 954, 956, 502 N.E.2d 1003, 1004 (1986).

10        7.    What Damages Plaintiffs Can Recover, if They Establish Liability.

11        Starwood contends that, if Plaintiffs can establish liability, their damages are limited to actual,

12   out-of-pocket expenses. *See Goodstein Const. Corp. v. City of New York*, 80 N.Y.2d 366, 429 (1992)

13   ("A party's alleged failure to bargain in good faith is not but for cause of [a plaintiff's] lost profits, since

14   even with the best faith on both sides the deal might not have been closed [and] attributing [a plaintiff's]

15   lost profits to [a defendant's] bad faith may be speculative at best."); *see also PA Holdings Ltd. v. Arthur*

16   *D. Little, Inc.*, No. 01 CIV. 6156 (GEL), 2001 WL 1335007, at *2 (S.D.N.Y. Oct. 30, 2001) (allowing

17   claim to proceed for out of pocket reliance damages, if such damages were "shown to have been caused

18   by the alleged breach").

19        Plaintiffs contend that they can recover, among other things, compensatory damages, expectation

20   damages, and punitive damages. *See Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 96 F.3d 275, 280

21   (7th Cir. 1996); *SIGA Technologies, Inc. v. PharmAthene, Inc.*, 67 A.3d 330 (Del. 2013); *Worldwide*

22   *Servs., Ltd. v. Bombardier Aerospace Corp.*, No. 14 CIV. 7343 ER, 2015 WL 5671724, at *20 (S.D.N.Y.

23   Sept. 22, 2015).

                                                **MOTIONS**

24

25        The following motions have been filed or are currently pending:

26        1.    Starwood's Motion to Dismiss or, in the Alternative, to Transfer is currently pending.

27   Starwood filed the Motion on June 13, 2016.  The parties agreed to and the Court ordered a modified

28   briefing schedule.  *See* Dkt. 27.

                                                     9

2.      Plaintiffs filed an Administrative Motion to File the Case under Seal on April 14, 2016. The Motion was granted at the time, but the Court has since unsealed the case.

3.      The Court granted Starwood's Administrative Motion to Seal (Dkt. 32), allowing limited financial terms to be redacted.

4.      The parties' Stipulated Protective Order, submitted for the Court's approval on July 25, 2016 (Dkt. 40), to govern the exchange of confidential information during discovery.

5.      The parties anticipate that they may require additional administrative motions to seal, along similar lines as Starwood's most recent motion (Dkt. 32), to protect financial information or trade secrets exchanged during discovery.

## AMENDMENT OF PLEADINGS

The parties propose that the deadline for Plaintiffs to amend their Complaint should be 30 days following the Court's order on Defendant's Motion to Dismiss.  Defendant's deadline to amend its Answer, if required, shall be 30 days after filing of same.

## EVIDENCE PRESERVATION

Both parties certify that they have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"), and confirm that they met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action.

## DISCLOSURES

The parties have served Initial Disclosures pursuant to Fed. R. Civ. P 26(a) on the same day they file this joint statement with the Court.

## DISCOVERY

The parties have not taken any discovery to date other than Initial Disclosures pursuant to Fed. R. Civ. P. 26(a).  The parties do not anticipate any changes to discovery rules.

The parties do not anticipate any necessary changes to limits on discovery set out in the Federal Rules of Civil Procedure.

The parties anticipate that there will be substantial document and ESI production, interrogatories, requests for admission, expert reports, and no more than 10 depositions per side (including the Rule

30(b)(6) depositions for each side, which will count as a single deposition).

The parties have discussed the possibility of a formal ESI Discovery order, but do not believe one is necessary at this stage of the litigation.

## CLASS ACTIONS

This case is not a class action.

## RELATED CASES

There are no related cases.

## RELIEF

Plaintiffs seek the following relief:

1.  Compensatory damages, including lost profits, in an amount to be determined at trial,

2.  Punitive damages in an amount to be determined at trial,

3.  Disgorgement of unjust enrichment in an amount to be determined at trial,

4.  Interest on the above damages, and

5.  Attorneys' fees and costs.

Plaintiffs maintain that their calculations of damages will depend on information that Starwood will produce in discovery.  Therefore, Plaintiffs assert that computation of damages cannot be determined at this time and that it may also require the assistance of expert consultants and expert witnesses.

## SETTLEMENT AND ADR

In December 2015, the parties engaged in a mediation that did not result in an agreement or settlement.  Since that time, the parties have discussed settlement on more than one occasion but have been unable to reach an agreement or settlement.  The parties believe that no ADR process at this stage of the litigation is likely to result in a settlement.  They are willing to attempt mediation again, at a later stage, but the parties believe they would need at least some discovery on all the factual issues prior to conducting another formal mediation in order to justify the cost and resources required.

## CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES

Plaintiffs have consented to have a magistrate judge conduct all further proceedings including

trial and entry of judgment.

Starwood does not consent to have a magistrate judge conduct all further proceedings including trial and entry of judgment.

## OTHER REFERENCES

The parties do not believe this case is suitable for reference to binding arbitration, a special master or the Judicial Panel on Multidistrict Litigation.

## NARROWING OF ISSUES

The parties have identified the overarching factual and legal disputes as issue in this case, as set forth above.  The parties have also agreed that New York law governs both Plaintiffs' fraud claim and their breach of the covenant to negotiate in good faith claim.  The parties also do not believe that any bifurcation or issues, claims, or defenses is required in this case.

## EXPEDITED TRIAL PROCEDURE

The parties do not believe that this case is appropriate for Expedited Trial Procedure of General Order No. 64 Attachment A.

## SCHEDULING

The parties jointly propose the following schedule:

| Event | Proposed Schedule |
| --- | --- |
| Deadline to amend pleadings | 30 days following the Court's order on Defendant's motion to dismiss. |
| Close of Fact Discovery | April 3, 2017 |
| Expert Disclosures and Opening Reports | May 1, 2017 |
| Rebuttal Expert Disclosures and Rebuttal Reports | June 1, 2017 |
| Close of Expert Discovery | June 22, 2017 |
| Any Motions for Summary Judgment | June 30, 2017 |
| Pre-Trial Conference | November 2, 2017 |
| Trial | November 13, 2017 |

## TRIAL

The parties propose November 13, 2017 for trial.  The parties anticipate that the trial will last five

to seven days.

### DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

Plaintiffs filed their Disclosure of Non-Party Interested Entities or Persons on April 12, 2016, and Defendant filed its Disclosure of Non-Party Interested Entities or Persons on July 26, 2016.

### PROFESSIONAL CONDUCT

The parties certify that all attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

Dated:  July 27, 2016                              DURIE TANGRI LLP

                                           By:    _____*/s/ Michael A. Feldman*_____
                                                         MICHAEL A. FELDMAN

                                           Attorneys for Plaintiffs JMA VENTURES, LLC and
                                           THE ROXBOROUGH GROUP, LLC

Dated:  July 27, 2016                              BRYAN CAVE LLP

                                           By:    _____*/s/ Meryl Macklin*_____
                                                         MERYL MACKLIN

                                           Attorneys for Defendant STARWOOD HOTELS &
                                           RESORTS WORLDWIDE, INC.

**CERTIFICATE OF SERVICE**

I hereby certify that on July 27, 2016 the within document was filed with the Clerk of the Court using CM/ECF which will send notification of such filing to the attorneys of record in this case.

*/s/ Michael A. Feldman*
MICHAEL A. FELDMAN