**Pages 1 - 14**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE JAMES DONATO, JUDGE

JMA VENTURES, LLC and THE ROXBOROUGH GROUP, LLC,

Plaintiffs,

VS.

STARWOOD HOTELS AND RESORTS WORLDWIDE INC.,

Defendant.

**No. C 16-1941 JD**

San Francisco, California
Thursday, October 6, 2016

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

For Plaintiffs:

DURIE TANGRI LLP
217 Leidesdorff Street
San Francisco, California 94111
**BY: MICHAEL A. FELDMAN**
**JOSHUA H. LERNER**

For Defendant:

BRYAN CAVE LLP
560 Mission Street, 25th Floor
San Francisco, California 94105-2994
**BY: MERYL MACKLIN, ESQUIRE**

BRYAN CAVE LLP
1290 Avenue of the Americas, 35th Floor
New York, New York 10104
**BY: JACQUELYN N. SCHELL, ESQUIRE**

**Reported By: Katherine Powell Sullivan, CSR No. 5812, RMR, CRR**
**Official Reporter**

**Thursday - October 6, 2016** **11:28 a.m.**

**P R O C E E D I N G S**

**---000---**

**THE CLERK:** Calling 16-1941, JMA Ventures, LLC versus Starwood Hotels and Resorts Worldwide.

Counsel.

**MR. FELDMAN:** Good morning, Your Honor. Michael Feldman from Durie Tangri on behalf of plaintiffs.

**MS. SCHELL:** Good morning, Your Honor. Jacquelyn Schell on behalf of Starwood.

**THE COURT:** Okay. So who's the younger person, younger lawyer?

**MR. FELDMAN:** I am.

**THE COURT:** I was going to have you go first, before Airbnb, but I thought you don't want an audience of 70-plus media.

**MR. FELDMAN:** Thank you, Your Honor.

**THE COURT:** Not that you're going to do a bad job. But having been in your position, a smaller courtroom is sometimes better.

Okay. So I am going to rule from the bench today, but I do have some questions first to make sure we're heading in the right direction. And these are going to be for you, Mr. Lerner -- Lerner, right?

**MR. FELDMAN:** Feldman.

**THE COURT:** Feldman. I'm sorry. Mr. Feldman.

I'm having a hard time seeing why you should not be in Manhattan.

The letter of intent, which is what you are suing on, was signed at the same time, roughly the same time, as the confidentiality agreement. It invokes the confidentiality agreement.

And it looks to me that your causes of action require you to construe the confidentiality agreement in order to decide whether information that should have been shared wasn't or whether the hotel made some representations that they disclaimed any responsibility for.

So how do you -- how do you litigate your case without looking at that confidentiality agreement?

**MR. FELDMAN:** Well, Your Honor, there are two claims in the case. One for breach of the covenant to negotiate in good faith and the other for fraud.

The covenant to negotiate in good faith is based exclusively on the letter of intent and the extensions, and that has nothing to do with the confidentiality agreement. So --

**THE COURT:** Let me just jump in.

**MR. FELDMAN:** Sure.

**THE COURT:** I mean, this is interesting to me because it's more than the usual nondisclosure agreement. It has all

sorts of substantive terms in it.

Paragraph 6 says, no guarantee about anything we tell you. We can lie to you and we're not responsible for it. We're not warranting anything.

I mean, that's going to be their defense. They're going to say, We told you. We signed a contract saying you can't hold us responsible for these kinds of representations.

**MR. FELDMAN:** So, Your Honor, the confidentiality agreement specifically does not apply to willful misconduct. Section -- I believe Section 7(b)(2) says there's no liability except for instances of willful misconduct, but which certainly includes fraud.

Basically, Starwood here has found an agreement that says this agreement does not apply to fraud, and they are now saying the venue provisions in this agreement should apply to your fraud claims. And we think that's --

**THE COURT:** Tell me what you understand the *Manetti-Farrow* test to be.

**MR. FELDMAN:** The *Manetti-Farrow* test says that if the -- if the case -- the claims require interpretation of the agreement, then the venue of laws can't apply.

In this case, I don't think the -- that any of the claims require an interpretation of the -- of this confidentiality agreement for two reasons.

First, that the confidentiality agreement specifically

says this does not apply to claims for fraud. So there's no reason to address the confidentiality agreement.

And, second of all --

**THE COURT:** Let me just jump in. So just right there you have to look at the confidentiality agreement. I mean --

**MR. FELDMAN:** You have to look at the confidentiality agreement insofar as it says, by the way, and to the extent there's anything in this agreement, it doesn't apply to willful misconduct claims such as fraud. But, second of all --

**THE COURT:** Your opponent can tell me if I'm wrong, but I'm assuming in paragraph 6, where Starwood said, we make no guarantees whatsoever that anything we're telling you is correct, it's got to be front and center their defense of this case. Because you're saying, on the plaintiffs' side, what you told us is wrong and you're liable for that. And they're going to say, hey, you know, we said in paragraph 6, doesn't matter. That's their whole defense, or at least a good chunk of it.

Is that right?

**MS. SCHELL:** It is a substantial part of it. There are several disclaimers in the confidentiality agreement that we would invoke.

**THE COURT:** So how would that not come up with Mr. Feldman?

**MR. FELDMAN:** Well, as a matter of law, someone cannot disclaim liability for fraud, especially where it has superior

knowledge of the facts at issue.

**THE COURT:** Well, that may be.

**MR. FELDMAN:** So as a matter of law --

**THE COURT:** But along the way to that, someone is going to say let's look at paragraph 6 in the confidentiality agreement.

All I'm saying -- paragraph 6 does not have to be legally binding. It doesn't have to be right. All the Ninth Circuit says is, if you have to look at paragraph 6, no matter how it comes out, you're looking at paragraph 6, which means the venue provision applies.

**MR. FELDMAN:** Well, because it is not permissible to waive or to disclaim liability for fraud, there's no need to look at the agreement, because Starwood can say, hey, look there's this paragraph 6. And our response, well, you don't need to look at it, because even if it says what you say it does, and even if you interpret it that way, it wouldn't matter because you can't do that as a matter of law.

**THE COURT:** Ms. Schell. Ms. Schell? It is Ms. Schell?

**MS. SCHELL:** It is, Your Honor.

**THE COURT:** Tell me why that's wrong.

**MS. SCHELL:** I think Your Honor's exactly right on the *Manetti-Farrow* question and the overall approach to this motion to dismiss or transfer.

All of the claims arise out of and relate to the confidentiality and access agreement, and the confidentiality and access agreement provide for any matters arising out of or relating to that agreement will be heard in the courts of New York. I won't belabor that point (inaudible).

**THE COURT:** Speak up. Boom it out.

**MS. SCHELL:** I would like to address the willful misconduct exception that plaintiffs have spent a lot of time on.

That is not an exception to the confidentiality and access agreement. It is an exception to a single disclaimer of liability that plaintiffs agree to in paragraph 7. That is where plaintiffs agree that they would not attempt to hold Starwood liable for any costs of its own inspection.

That is not a provision -- this willful misconduct allegation they're making would not end the confidentiality and access agreement. It wouldn't get us out of the choice of forum provision. It wouldn't get us out of the confidentiality obligation. It wouldn't undo the contract. It would just reopen this very specific portion about disclaiming costs arising from their inspection. So that's, I think, a bit of a red herring.

But even if the willful misconduct could affect the overall applicability of the confidentiality and access agreement, you have to look at the access agreement to

determine if there's willful misconduct.

In order to say Starwood didn't do what they promised to do, you have to analyze what they promised to do. And the access agreement governs the parties' rights and obligations in terms of providing access, providing information, allowing plaintiffs to conduct their own investigation. Plaintiffs agreeing to disclaim liability and disclaim reliance on any information provided by Starwood --

**THE COURT:** Where is that?

**MS. SCHELL:** -- in exchange for that access --

**THE COURT:** Where is that?

**MS. SCHELL:** Which portion?

**THE COURT:** Which paragraph in the disclosure agreement?

**MS. SCHELL:** In the confidentiality and access agreement?

**THE COURT:** Yes.

**MS. SCHELL:** Paragraph 6 is where plaintiffs agree -- plaintiffs acknowledge that Starwood makes no representation, warranty or guarantee whatsoever with respect to any of the confidential information, which by the first page of that agreement includes negotiations, statements about the information, drafts of the agreement. It's a very broad definition of "confidential information."

It also -- paragraph 6 also states that "Starwood shall

have no liability for the receiving party's use of or reliance on any such confidential information."

**THE COURT:** Are you all relying on paragraph 18 as part of your defense, not an offer?

**MS. SCHELL:** Yes, Your Honor. That's also relevant.

Paragraph 18 states that nothing in the agreement, the execution, delivery and, I believe, any subsequent discussions under the access agreement, and then the later letter of intent, can be considered binding obligations or agreements to complete any final -- final definitive agreements.

The access agreement in paragraph 18, as you mentioned, is also where Starwood makes clear and it's agreed that any definitive agreements, if they're reached, if they're signed, if they're executed, are still subject to Starwood's board of approval, Starwood's board of directors' approval. It's a publicly traded company.

**THE COURT:** How is that at a high level? You don't have to disclose anything yet, but how is that a defense to the claims?

**MS. SCHELL:** Plaintiffs -- let me separate the two.

We have asserted it here as a defense to the fraud claims as a reason -- one of many reasons why plaintiffs have failed to state a claim for fraud.

They are -- fraud claims that's four subpoints, but all of them rely on this idea that Starwood said something, and

plaintiffs relied on that statement or that omission or, you know --

**THE COURT:** So, in other words, said, we have a deal, or words to that effect, and plaintiffs kept thinking, that's great.

**MS. SCHELL:** That's plaintiffs' contention, is that --

**THE COURT:** And your defense is going to be, it doesn't matter what we said. We told you in paragraph 18, no deal until the board --

**MS. SCHELL:** Yes, Your Honor. That's exactly right.

And there is case law in New York -- which plaintiffs acknowledge that New York laws governs the contract, the breach of LOI, and the fraud claim in this action. And there's New York case law that says you cannot plead reliance on statements to support a fraud claim where you have expressly disclaimed reliance in the agreements that govern the relationship.

**THE COURT:** All right. Mr. Feldman, even if you had an argument about paragraph 6 -- let's just say for the moment you do -- paragraph 18 seems front and center on the defense. You've got to look at that paragraph to decide whether you have a claim or not, at least in part.

**MR. FELDMAN:** Well, under New York law the parties can enter into a binding preliminary agreement, which is what they've done here. And even if the definitive agreement is

premised on board approval, the binding preliminary agreement is still a binding contract. In fact --

**THE COURT:** Well, unless the parties have agreed to a different arrangement.

**MR. FELDMAN:** Yes.

**THE COURT:** So that's just sort of the base law. Okay.

You-all are free in contracts to modify that in any way. And what I hear your opponent saying is Starwood said don't count on anything until the board says it's a deal. And right or wrong, they're going to stand on paragraph 18 and hand it to a judge somewhere and say, Your Honor, this is why that claim has to fail. It doesn't matter -- you know, it doesn't really matter -- the agreement does not have to be dispositive of the claim. It just means you have to look at it. Under *Manetti*, it's an important factor that you have to read and digest and look at.

And it's equally possible -- I know you disagree -- that a Court would say yes, that does provide a defense. And once you go through that door, though, the Ninth Circuit says you've got to honor the venue clause because it's part of the deal.

So give me your last pitch on why -- Manhattan is delightful. You'll enjoy it.

**MR. FELDMAN:** I used to live in Manhattan. I like Manhattan.

**THE COURT:** I used to live in Brooklyn, but apparently -- it said New York State, so I thought I'll send you to the Eastern District, because I like it. But it says New York County. And that, apparently, according to our research, is just the island of Manhattan. Is that correct?

**MS. SCHELL:** New York County, yes, is just Manhattan.

**THE COURT:** I have to send you to the Southern District of New York.

**MR. FELDMAN:** If you were to transfer the case.

**THE COURT:** Right. I'm going to transfer. I'm not going to dismiss it.

Okay. So here is my ruling. This is a bench ruling. It will be in the minutes, but there will be no separate written order, other than the minutes.

The threshold question in this case is whether the confidentiality and access agreement covers the plaintiff -- or informs the plaintiffs' claims for fraud and a breach of the covenant of good faith and fair dealing.

The parties agree that a forum selection clause applies to the case if the litigation requires reference to or interpretation of the contract containing the clause. That's *Manetti-Farrow vs. Gucci America Inc.*, 858 F.2d 509, 514, Ninth Circuit 1988. That is true for tort and contract claims. *Id.*

The forum selection clause in the confidentiality agreement here states that, quote, Any matter arising from or

in connection with the agreement shall be conducted in federal or state courts in New York County, in the State of New York, closed quote. That's Docket Number 1, Exhibit C, paragraph 13.

This Court analyzed very similar language recently in a nondisclosure agreement in *Tela Social v. Orange*. The Circuit affirmed the Court's decision with respect to the application of the *Manetti-Farrow* to venue clauses.

*In re Orange S.A.*, 818 F.3d 956, 962, Ninth Circuit 2016, cert denied in 2016. Specifically, the Ninth Circuit affirmed that District Courts must look to see whether there is, quote, anything factually within the claims that require it to interpret the NDA, period, closed quote. *Id.* at 963. And that approach applies here.

Plaintiffs' claims for fraud and breach of good faith allege that prior to and varying negotiations Starwood failed to disclose defects and made false assurances about its commitment to finalizing a deal. The liability for these claims necessarily requires interpretation of several paragraphs of the confidentiality agreement, including paragraph 6, paragraph 7, and paragraph 18.

Consequently, since the agreement is going to be part and parcel of the defense in this case, I'm going to transfer the case to the Southern District of New York under 28 U.S.C. Section 1406(a). I'm not dismissing it, but I am going to transfer you.

So pack your bags. You're on your way to Manhattan. Okay.

**MR. FELDMAN:** Thank you, Your Honor.

**MS. SCHELL:** Thank you, Your Honor.

**THE COURT:** Thank you very much.

(At 11:44 a.m. the proceedings were adjourned.)

- - - -

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE: Friday, October 14, 2016

Katherine Sullivan

___________________________________

Katherine Powell Sullivan, CSR #5812, RMR, CRR
U.S. Court Reporter